Good morning, your honors. Nicholas Markey on behalf of Petitioner Juana Espino Garcia. May it please the court. As the court will note, this is a case from 2014. Started with Ms. Espino Garcia presenting herself at the border with her fears of return to Mexico. As noted in the record, she had a credible fear interview, passed her credible fear interview, and was placed into removal proceedings. A I-589 application for withholding Convention Against Torture and GATT were filed with the court. The basis... Yes, your honor. Counselor, can I focus you in on where I'm having trouble here? I mean, this is a case about nexus and whether there's enough evidence to show nexus. And based on the story of this case, it seems that you have two links there. One, that you have to show there was a political connection to why your client's sister and her husband were killed. And then two, you have to show that your client was threatened related to what happened to her sister, that it's sort of a trickle-down thing from that incident. I think the second part is there. I think there is evidence beyond speculation that she received some sort of targeting and it had some sort of connection to what happened to her sister based on the agency finding her credible. But that first link I'm struggling with, and the agency struggled with, obviously, concluding that whether the sister and her husband were targeted for political reasons was speculative. So I need you to point me to the best evidence that you have to show that that connection was there. Your Honor, as part of the submission, the pre-hearing statement, at AR, I believe it is 145 and subsequent, records were submitted on behalf of the brother-in-law, who was a party member, as well as her testimony about their party involvement and the IJ's finding that they had worked for the mayor's office. So I believe that sufficient information was provided for the imputed political opinion. The problem we have in this case is that the IJ didn't address that information specifically. Additionally, he never addressed the PSG of governmental workers, which was raised in the pre-hearing statement at AR 148. Here, the immigration judge focused primarily on his speculation that this was some sort of drug deal or deal gone bad, in which he said it'd make no sense about how the parties were involved with the mayor's office and the schools and things like that. Well, he speculated that it was something more. I'm not quite sure you've answered my question because, yes, these facts are true, that the sister and brother-in-law were involved in politics, were working with the mayor, were politically active. All that's true, but that's not enough, right? You have to actually show that because of those things, they were targeted for violence. And that's the question, right? Like, what is in the record that shows us that the people who murdered them did so because of their political activity? It comes in the record, Your Honor, from the petitioner's testimony. There's not going to be any specific information that I think that the court is looking for as in a report or something like that. While news articles were submitted in support of the claim addressing the violent nature of the execution style of these two individuals who were killed in Mexico, there was no indication who it was. As is often difficult in these cases when refugees come to the United States, getting specific documents from the government that shows a political connection to them is often difficult. Here we can impute it through the working with the mayor's office as well as documentation showing that they were political party members. I think a credible testimony, which the IJ found to be credible, supports that claim. Counsel, exactly what part of the transcript do you want us to look at? Your Honor, I suggest it starts at page AR 145 with the identification of the PSG and then proceeds for about 25 pages or thereabouts on the additional documents that were submitted in support of the claim. They were attached to the pre-hearing statement. Counsel, I'm still struggling with the connection. I think if I understand your response right, you said it's difficult to find evidence of motivation. I'll give you that. And our case law says it could be direct evidence, it could be circumstantial evidence. And then you said the fact that these family members were political. We can impute that they were targeted because of their politics. And that's where I'm like, I don't see what the link is. All we have is your client's testimony saying, I think that my sister and her husband were killed because of their politics. And then we have timing, I guess, because they were killed close in time to when they were being politically active. And you have documents that support that they were politically active. I would agree with the court that it's tenuous if we had statements saying that, you know, my family works for the party and they do recruiting. But we have nothing that establishes that. I think you have the credible testimony of the petitioner as well as documentation. The question is the connection to the persecutors or to the sicarios. And there is this strange evidence about them taking their sister and brother-in-law's phone away and telling them they shouldn't travel anywhere, which Espino-Garcia says was because they didn't want them reporting to outside political people, I guess. Can I change the subject for a minute? Yes, ma'am. We have a withholding claim and an asylum claim. The withholding claim is subject to an a motive test rather than to a central motive test. And it doesn't appear that that standard was applied here. Does that matter? I believe it does, Your Honor. Under Barajas, which changed the motive from one central to a reason for the persecution, that was not applied. And I believe that's what we argue in our supplemental brief that this matter should be remanded. I understand it wasn't applied, but the question is how does it interact with the question of the adequacy of the evidence or the standard that we applied to looking at the evidence? If the wrong standard was applied, does that change the quantum of evidence of political connection that is needed before we at least remand to apply the right standard? In other words, what would trigger a remand to apply the right standard? Anything or does there have to be some quantum of evidence, which is what I understand. Something like Barajas says it has to be not unambiguous. Something like that. Well, I think at this point, Your Honor, it would be. And I think given the nature of the record we have on this case, the government states that this is not a mixed motive case. It's saying that it is a case in which this is just general violent country conditions. We are saying that it is a politically involved case that has its motive also. Because of the change in the law and the way of the fact pattern in this case and how the IJ, his decision, I think that it should be remanded. There is enough question in the record as to whether Barajas applies or not. And it's not for this court to decide, but it should be remanded to the IJ to make a determination. Because he or the IJ can make the determination and request a hearing on the motive. And that's what we're requesting in our supplemental briefing is that the matter be remanded. There was a hearing. I don't know if there needs to be another hearing. The question is whether the right standard was applied on the withholding ground. That could be true, Your Honor. That's all I have. Judge Forrest was asking questions as to whether there is any evidence here. If there were no evidence or just a minuscule amount of evidence to connect any of this to a political opinion, would we have to remand on the withholding question, even if it was the wrong standard? I would submit you would, Your Honor. Would you like to save some time for rebuttal? No, Your Honor. Okay. Then you have 45 seconds left. Sir, do you want to save time for rebuttal, or are you telling me no, you don't want to save time for rebuttal? No rebuttal, Your Honor. Do you want to wrap up? That's all I have, Your Honor. All right. Thank you. We'll hear from opposing counsel. May it please the Court, Matthew George for the Attorney General. I want to jump into the Barajas standard question that Judge Berzon was asking about. Barajas itself says where there's no nexus at all, the Court draws no distinction between the two different standards, the A reason and A central reason, and that's what's going on in this case. That's what the agency has found and said is that there isn't a nexus at all here, and because the evidence that Espino presented was speculative, and the standard that the Court should apply to that is whether the record compels a finding that a protected ground, the political opinion in this case, compels a finding that that was at least a reason. There was some evidence. I mean, that is that these people were politically active. There was evidence that he worked for the mayor. There was evidence that the Sicarios took their phone away because they didn't want them communicating with people outside the area, and they told them not to travel anywhere, and they did travel somewhere, and that was at least she attempted to connect that up to the political motive because they were dealing with political people outside the immediate area. So there was some evidence. There was quite possibly not enough evidence to survive a substantial evidence review on the right standard, but the question is what if it wasn't the right standard? Well, again, Barajas itself says where there's no nexus at all, then the standard doesn't matter. If we disagree with you that there's no evidence, in other words, if we agree that there is some evidence, then what's your best argument? Well, there needs to be compelling evidence that the political opinion was at least a reason for the standard to matter, and here there isn't. At this juncture, as I understood your going-in argument, there wasn't, in fact, they did not, in fact, apply the central reason standard, even though that's the standard they quoted. So if we thought that, then maybe you're right, but suppose we thought they did apply the central reason standard because that's what they said they were applying, then we're not looking at a compelling determination problem. We're looking at applying the wrong standard problem, and the question is when do we remand if the wrong standard was applied? Well, there still would need to be at least compelling evidence of at least a reason, because the Court has in numerous cases. Before we decide whether there's compelling evidence that whether there was a reason, even if the agency didn't apply that standard? Because what difference would it make if there's no evidence or there's no compelling evidence of a reason? No evidence is one thing, but no compelling evidence is another, and Barajas' remand says that we remand if the record is not unambiguous, and there was a later case, too, which applied that standard, and not unambiguous, which seems to me is equivalent to is there any evidence? Well, the first standard should be any evidence is not the standard. We still need to know is there compelling evidence that it's a reason. Excuse me. Because if it's not, what does it matter? You're not really engaging with the problem. If the wrong standard was applied, why are we looking for compelling evidence? Because that's the standard overview that the Court applies to the facts. Whether the evidence compels a contrary conclusion, is that what you're saying? Yes, Your Honor. Can I ask a little different question that I have? I don't mean to sidetrack the conversation, but I'm very distracted by this notion about the IJ thinking this may have been a drug deal gone bad. Is there any evidence of that? No, and that's just the immigration judge offering another conclusion that can be drawn from this evidence. That's illustrating the greater point. What evidence? From what evidence? It seemed to be entirely speculative and really quite unusual for us to see something like that that springs out of nowhere. But maybe, you know, we have a lot of cases on the calendar this week. Did I miss something in the record that suggests a drug deal? I don't know. I mean, there are certainly these armed criminals involved, and I assume they're involved with drug deals. Now we're just kind of layering, adding layers of speculation, counsel. I don't mean to be unfair, but this is important to these folks. So could you tell me, was there any basis for the IJ's statement that this may have been a drug deal gone bad or that they may have been the victims of drug dealers? I don't know what the court is looking for in terms of a basis. I mean, a conclusion that's reasonable to draw. I'm looking for some evidentiary basis. And I'm being quite candid, maybe too much so in telling you, but I want you to have a fair chance to respond, that that struck me as entirely speculative. Did I miss something? I'm not sure exactly what the immigration judge was looking at in terms of drawing that conclusion. There wasn't testimony about it, if that's what the court is getting at. It's just a conclusion. It's illustrating the immigration judge's broader point of that multiple conclusions can be drawn. The immigration judge is not saying that's what happened here. Okay. All right. So just getting back to Judge Berzon's point, the reason it jumps out at me is it does seem to be entirely speculative. So I think I answered my question where you don't see evidentiary support either, you know, fair enough. But it's why it matters when we talk about whether there's a reason, because I'm concerned that there is some evidence in the record here, and the question is whether the IJ engaged with it. And that's what Judge Berzon's been trying to, I think, call your attention to. I guess your position on this point, and then I'll just hand it back over, but I think your position is you don't see any evidence in the record, so you're not concerned about the Barajas standard, right? I don't see compelling evidence. Okay. Simply saying a protected ground. So what about the language in Barajas about not that we remand to apply the right standard unless it's not unambiguous, if it's not unambiguous? That's not a compelling evidence standard. That is a not unambiguous standard. Well, then the court should be remanding every single case that didn't apply Barajas, and it hasn't been doing that. No, there's a standard, i.e., which I understand it means, is there any evidence? Is there any evidence? We have certainly participated on cases, counsel. We have certainly participated on cases where that other standard was used, and we have said, yeah, but there's nothing, not one central reason or one reason. No problem. But what we're trying to tell you is that this doesn't strike us as that kind of case, or at least I'll just speak for myself. I understand that there is some evidence trying to make a connection to a political opinion. The bigger point is if that evidence isn't compelling, how is the agency going to make a different conclusion under the central reason versus a reason standard? If it said, look, you failed to prove a nexus at all, we find your evidence speculative. Show me where in the opinion it says they failed to prove a nexus at all. The board says that her evidence is speculative, and it's not required to draw the conclusions that she wants to draw from it. I think that Judge Christian's questioning indicated the difference between what really is speculative, which is whether there's a drug deal, because there's absolutely nothing to suggest there was a drug deal, and whether there's a connection to political opinion as to which there's some evidence, maybe not enough evidence, but it's not speculative in the sense that there's nothing there. There's something there. This case is about what conclusions do you draw from the evidence. That's right. And the agency is saying we're not going to... That's what the agency said to do, applying the right standard. But the agency said under any standard, it doesn't find this... All right, where does it say that? That's what I want to know. I want to know where it said that. That's what the immigration judge and the board say. On page 2 of the board's decision, that's what it's talking about, assumptions, inferences, that it's not compelled to draw, or it's not required to draw, and it's not going to draw. Okay, but at first... And that's what the Supreme Court in Ming Dai has said, the agency isn't compelled to reach the conclusions that a litigant wants. So she's offered these... I mean, it's like in many cases where an individual says, look, my family members have been killed. Just because family members have been killed doesn't mean that it's on account of a family. We understand that. And the agency is saying... We understand that. And so your response is that we need to look at the... For the actual reasoning, we look at page 2 of the BIA decision, that's it? That's where the board is addressing her evidence... All right. And saying we're not going to draw the conclusions that she wants to draw. And that's what the court has said in many cases, that it's not... The agency isn't required to draw the inferences that... No, but it is required to apply the correct standard. And that's what we're struggling with because it's pretty unambiguous. But where does that matter? It's pretty unambiguous that the wrong standard was applied. Would you agree? Well, we don't even get to the standard because we're looking at the underlying facts. Okay. Whether it's... They're saying it's not a reason at all. All right. We've taken you over your time. Do you want to wrap up? The substantial evidence supports the board's decision here, and the court should deny the petition. Thank you. Thank you for your patience with our questions. We'll take this case under advisement and go on to the next case on the calendar.
judges: BERZON, CHRISTEN, FORREST